IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILLIP LEE FANTONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-0484 |
| | ) | |
| MICHAEL J. HERBIK, DD, | ) | Magistrate Judge Cynthia Reed Eddy |
|    in his official and individual capacity, | ) | |
| BRIAN V. COLEMAN, | ) | |
|    in his official and individual capacity, | ) | |
| ROBERT TRETINIK, RN, | ) | |
|    in his official and individual capacity, | ) | |
| PETE SAAVEDRA, | ) | |
|    in his official and individual capacity, | ) | |
| DARLA COWDEN, PA, | ) | |
|    in her official and individual capacity. | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I. Introduction.**

It is respectfully recommended that the pending dispositive motions in this case be denied as premature or as moot, and the non-dispositive motions will be resolved by separate order of Court, as set forth herein.

**II. Report**

Plaintiff, Phillip Lee Fantone, has brought this *pro se* prisoner's civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, in which he claims that, collectively, the named defendants failed to respond reasonably to known, serious medical needs, which ultimately necessitated emergency, major back surgery. There is a great deal of detail in Plaintiff's complaint regarding his course of treatment for osteoarthritis, degenerative disc disease and fibromyalgia during his incarceration in the Pennsylvania Department of Corrections system

1

from 2005 forward, and of his transfers within the system during that period.

For purposes of reviewing two pending motions to dismiss, Plaintiff's chief complaint is that on May 22, 2009, he had an MRI of the lumbar spine at the Southwestern Regional Medical Center in Waynesburg, Pennsylvania, which indicated severe stenosis, nerve root thickening and modial edema which presented acute medical urgency that required immediate surgery; however, he did not learn of the results of this MRI until September, 2009 although prison officials knew of the results and the severity. Amended Complaint, ¶¶ 53-73. After filing certain grievances, Plaintiff was placed in protective custody in the "hole," and eventually transferred to SCI-Pittsburgh, where his medical condition deteriorated and he received emergency treatment culminating in major surgery in January 2010. Amended Complaint, ¶¶ 74-100. Plaintiff claims that defendants showed deliberate indifference to serious medical needs, which caused him much pain, suffering and injury.

Before the Court are several pending motions, which will be addressed *seriatim*.

A. Motion To Dismiss Plaintiff's Amended Complaint By Darla Cowden, Michael J. Herbik (doc. no. 22)

The "Medical Defendants," Michael Herbick, Medical Director of SCI-Fayette, and Darla Cowden, a Physician's Assistant at SCI-Fayette's medical department, move to dismiss the complaint for failure to state a claim. A well-pleaded complaint must contain more than mere labels and conclusions. *See* Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Iqbal,* 129 S.Ct. at 1949.

When determining whether dismissal is appropriate, the Court conducts a two-part analysis. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and

legal elements of a claim are separated. *Id.* The Court must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the Court must determine whether the facts alleged in the Complaint are sufficient to show that Plaintiff has a "plausible claim for relief." *Id.* at 211. In other words, the Complaint must do more than allege Plaintiff's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not shown-that the pleader is entitled to relief." Iqbal, 129 S.Ct. at 1949 (quoting Fed.R.Civ.P. 8(a)(2)).[1]

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In Estelle v. Gamble, the United States Supreme Court held that the government has an affirmative obligation to provide medical care to its prisoners. *See* 429 U.S. 97, 103 (1976). "[D]enial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id*. Prison officials violate the Eighth Amendment by acting "in deliberate indifference to the serious medical needs of prisoners." *Id*. at 104.

The bar for "deliberate indifference" is set fairly high; not every failure to treat inflicts cruel and unusual punishment. "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. To state a claim, Estelle requires that a prisoner establish: (1) that the

---

[1] A claim is facially plausible when its factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*

3

defendants were deliberately indifferent to his medical needs and (2) that those needs were serious. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

The test for "deliberate indifference" is a subjective one. Farmer v. Brennan, 511 U.S. 825, 840 (1994). Under this test, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842. The existence of this subjective state of mind may be inferred from the obviousness of the risk of harm. *Id*. "[C]laims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Rouse, 182 F.3d at 197. Because "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain,'" *id*. (quoting Estelle, 429 U.S. at 105), deliberate indifference requires "'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id*. (internal citations omitted).

Although medical malpractice by itself fails to support a finding of deliberate indifference, the fact that a prisoner has received medical treatment does not necessarily preclude such a finding. See Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993) (rejecting the district court's conclusion that the doctor's "conduct in sending [the plaintiff] to several different specialists and providing of some treatment precludes a finding of deliberate indifference."). Courts have found deliberate indifference in a variety of circumstances involving deficient treatment.

For example, deliberate indifference has been found where prison authorities deny reasonable requests for medical treatment and the denial "exposes the inmate 'to undue suffering;'" or where "necessary medical treatment [i]s . . . delayed for non-medical reasons." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (internal

citations omitted). Additionally, deliberate indifference has been shown when "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." Lanzaro, 834 F.2d at 347 (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979)).

Once a prisoner establishes deliberate indifference, under the second prong of the *Estelle* test he must establish that his medical needs are "serious." A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Lanzaro, 834 F.2d at 347. The United States Court of Appeals for the Third Circuit has also recognized that if "'unnecessary and wanton infliction of pain,' . . . results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) (quoting Lanzaro, 834 F.2d at 347).

In keeping with the principle that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner," Estelle, 429 U.S. at 106, courts give prison medical personnel wide latitude in the diagnosis and treatment of inmates. Courts should "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." Pierce, 612 F.2d at 762. "Mere allegations of malpractice" or "mere disagreement as to the proper medical treatment" do not support an Eighth Amendment claim. White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Although "mere disagreement" with treatment protocol does not support an Eighth

Amendment claim, liability attaches when officials continue a course of ineffective treatment or withhold necessary treatment in deliberate indifference to medical needs. *See* White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990). "Prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "'an easier and less efficacious treatment' of the inmate's condition." Lanzaro, 834 F.2d at 347 (quoting West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978)).

In light of the foregoing standards, this Court agrees with Plaintiff that his Amended Complaint sets forth sufficient averments to support his burden of proving that the medical defendants were deliberately indifferent to his medical needs and that those needs were serious. In short, Plaintiff has stated a "plausible claim for relief" at this stage of the proceedings, and this motion to dismiss should be denied.

B. Motion to Appoint Counsel (doc no. 56)

The United States Court of Appeals for the Third Circuit set forth the standard to be applied by district courts when responding to a request for counsel pursuant to the provisions of 28 U.S.C. Section 1915(e)(1) in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993). The Tabron Court acknowledged that district courts have no authority to compel counsel to represent an indigent civil litigant. *Id*., at 157 n.7. The Court also recognized that when "[a]n indigent Plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel." *Id*., at 156. The Court of Appeals likewise addressed the practical constraints confronted by district courts regarding the appointment of counsel, which include the ever-growing number of prisoner civil rights actions filed each year in the federal courts; the lack of funding to pay appointed counsel; and the limited supply of competent lawyers who are willing to undertake such representation without compensation. *Id*., at 157.

6

The Court of Appeals also announced a series of factors that the trial court should consider and apply in ruling upon a motion for the appointment of counsel. *Id*., at 155-56. These factors include: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations, and; (6) whether the case will require testimony from expert witnesses. to undertake such representation without compensation. *Id*., at 157.

After careful consideration of the pleadings to date and Plaintiff's motion for appointed counsel, this Court will deny the motion at this point in the litigation..

C. Defendants' Coleman and Tretinik's Motion to Dismiss Amended Complaint pursuant to Fed. Rule Civ. P. 12(b)(6) (doc. no. 57); and Motion for Supplemental Complaint (doc. no. 61)

Defendants Brian Coleman, Superintendant of SCI-Fayette, and Robert Tretinik, Correctional Health Care Administrator of the SCI-Fayette medical department, move to dismiss the Amended Complaint on the grounds that Plaintiff has failed to state a claim against them in that the Amended Complaint is very sparse with regard to their actual involvement. Plaintiff's response to this Motion to Dismiss is his Motion for Supplemental Complaint (doc. no. 61), in which he states that he can prove and has evidence of these defendants' personal involvement. This Court will grant Plaintiff's motion to amend his complaint, which will moot the motion to dismiss.

D. Plaintiff's Motion to Enter Evidence (doc. no. 59) and Motion for Reduction of Documents (doc. no. 60)

Plaintiff's Motion to Enter Evidence (doc. no. 59) is moot, given the Court's disposition of the previous motions – there is nothing pending in which Plaintiff would "enter evidence."

7

Plaintiff's Motion for Reduction of Documents (doc. no. 60) will be denied, as *pro se* Plaintiffs are not entitled to free copies of court documents.

### III. Recommendation

For the reasons set forth above, Plaintiff's Motion for Supplemental Complaint (ECF No. 61) will be granted. As a result, it is respectfully recommended that the pending Motions to Dismiss (ECF Nos. 22 & 57) both be denied as moot. In addition, Plaintiff's Motion to Appoint Counsel (ECF No. 56), Motion to Enter Evidence (ECF No. 59) and Motion for Reduction of Documents (ECF No. 60) all will be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to the recommendation that the dispositive motions to dismiss be denied. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

The non-dispositive motions will be disposed of as set forth above by separate text orders. Any party wishing to appeal this Court's orders with regard to the non-dispositive motions shall file a Notice of Appeal to the District Court on or January 9, 2012.

Dated: December 23, 2011

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge